THE PEOPLE ex rel. J. A. Giese et al. Defendants in Error, vs. JOHN DILLON, Plaintiff in Error.

*Opinion filed December 16, 1914—Rehearing denied Feb. 3, 1915.*

1. ELECTIONS—*when town clerk is bound to submit proposition to vote of the people.* Where a petition for an election under the Local Option law is presented to the town clerk his only function is to determine whether the petition is *prima facie* in compliance with the law, and if so, it is his absolute duty to submit the proposition to a vote of the people.

2. SAME—*the town clerk cannot go behind the petition to determine its legality.* If a petition for an election under the Local Option law is on its face in compliance with the statute, the town clerk cannot institute an investigation to determine whether the parties signing the petition are legal voters, whether they signed in their proper persons, whether the statement at the bottom of each sheet was made by an authorized person, or whether the petition was sworn to before an officer authorized to administer an oath. (*People* v. *Wanek,* 241 Ill. 529, distinguished.)

3. MANDAMUS—*mandamus is a proper remedy to compel town clerk to perform ministerial act.* *Mandamus* is a proper remedy to compel a town clerk to perform the ministerial acts of examining a petition for an election to determine its *prima facie* sufficiency, and to submit the proposition to a vote of the people if the petition, on its face, is in compliance with the law.

4. PRACTICE—*when judgment will not be reversed because the cause has become a moot case.* If a *mandamus* judgment compelling the town clerk to place the proposition for an election under the Local Option law upon the ballot at a town election is correct it will not be reversed merely because the cause has become a moot case, where the enforcement of the judgment was prevented by the plaintiff in error until after the town election was held.

5. SAME—*it will not be presumed that a judge hearing case on change of venue acted without being called in.* Where a change

of venue is taken from two of the judges of the circuit court and the case is heard by a judge of a city court in the same circuit with the county where the suit was tried, the record need not show affirmatively that such judge was called upon to preside at the trial, as it will not be presumed that he assumed jurisdiction *sua sponte*.

CRAIG, J., dissenting.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. WILLIAM HAWTHORNE, Judge, presiding.

W. A. PANNECK, for plaintiff in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error was sued out to review a judgment of the circuit court of LaSalle county awarding a peremptory writ of *mandamus* against plaintiff in error, John Dillon, town clerk of the town of LaSalle, requiring him to place on the ballot to be voted for at the town election to be held in the town of LaSalle April 7, 1914, the proposition whether that town should become anti-saloon territory. A petition by voters of the town of LaSalle was filed with plaintiff in error, as town clerk, asking that the question, "Shall this town become anti-saloon territory?" be printed upon the ballot to be voted upon at the town election. Plaintiff in error did not publish and post notices that the proposition was to be voted upon and refused to cause the proposition to be printed on the official ballot for said election. Thereupon the People, on the relation of J. A. Giese and Thomas N. Haskins, filed a petition in the circuit court of LaSalle county for a writ of *mandamus* to compel plaintiff in error, as town clerk, to cause the question whether the town should become anti-saloon territory to be printed on the ballot to be voted at the ensuing town election. The petition for the writ of *mandamus* alleged in detail a compliance with all the requirements of the statute known as the Local Option law for a submission to a vote of the question whether the town of LaSalle

266 – 18

should become anti-saloon territory. A copy of the petition filed with the town clerk was, as we understand it, though this is not clearly shown by the abstract, made a part of the petition for *mandamus* and showed *prima facie* a compliance with the statute. Plaintiff in error demurred to the petition for the writ of *mandamus*. The demurrer was overruled, and plaintiff in error filed what counsel calls seven pleas.

There were 2352 votes cast in the town of LaSalle at the last preceding general election. The law required the petition filed with the town clerk to contain the signatures of legal voters not less in number than one-fourth of the vote cast at the preceding election. It contained 986 signatures. The pleas or answer denied that the petition contained the names of 986 legal voters of the town of La-Salle; denied the names to the petition were signed by the parties in their own proper persons; denied the statement made at the bottom of each sheet of the petition was signed by a resident of the town; denied the said statements were sworn to by an officer in the county of LaSalle authorized to administer oaths, and denied the petition contained the signatures of not less than one-fourth of the legal voters of the town. It was also averred in the answer that 426 of the signers of said petition were women, and that they were not legal voters and had no authority, in law, to sign the petition. A demurrer to the answer was sustained, and, plaintiff in error not further answering, judgment was entered as prayed in the petition for *mandamus*. Plaintiff in error excepted and prayed an appeal to the Appellate Court for the second district, which was denied, and he thereupon sued a writ of error out of this court, which was made a *supersedeas.*

It is claimed this court has jurisdiction because the constitutionality of the Woman's Suffrage act was raised in the court below and presented for decision. Defendants in error have filed no brief, probably because before the case

could be passed upon by this court the time for the election
would have passed. The summons issued upon the filing
of the petition for *mandamus* was made returnable on April
1, 1914. On that day plaintiff in error applied for and
was granted a change of venue from two of the circuit
judges of that circuit and the judge of the city court of
Spring Valley was called in to hear the case. The judg-
ment awarding the writ was rendered April 3, 1914, and
the election was held April 7, 1914.

The position of plaintiff in error is, that if the facts
alleged in his answer to the petition are true, then it was
not his duty, as town clerk, to submit the question whether
the town of LaSalle should become anti-saloon territory;
that the demurrer to the answer admitted the truth of the
allegations, and therefore it was admitted of record that
the petition filed by the voters of the town of LaSalle did
not comply with the law, and the writ of *mandamus* should
have been denied and the petition therefore dismissed. The
correctness of this contention depends upon the power of
the town clerk to go behind what appears on the face of
the petition for the purpose of determining whether the
signatures to the petition are those of legal voters, whether
they were signed in person, whether the statement at the
bottom of each sheet of the petition was signed by a resi-
dent of the town, whether such statements were sworn to
by an officer having authority to administer an oath, etc.

The petition, on its face, appeared to be in compliance
with the law and *prima facie* sufficient to authorize and
require the submission of the question to a vote in the po-
litical subdivision. (Hurd's Stat. 1913, chap. 43, par. 28.)
If it was illegal in the respects claimed, that could not be
determined from an examination of the petition itself but
required an investigation outside of the petition. The town
clerk is a ministerial officer. It was his duty to examine
the petition, and if upon its face it appeared that it was
not in compliance with the requirements of the statute he

was not required to submit the question for a vote at the ensuing election. He, however, has no judicial powers, and where the petition presented appears on its face to be in compliance with the statute he cannot institute an investigation to determine whether the parties signing it were legal voters, whether they signed it in their own proper persons, whether the statement required to be made at the bottom of each sheet of the petition was made by a person authorized to make it, and whether it was sworn to before an officer authorized to administer an oath. The statute imposes the absolute duty on the clerk to submit the question to be voted upon when a petition is filed in compliance with the statute. He is given no discretionary power when a petition proper on its face is filed. His only function is to determine whether, upon the face of the petition, it is in compliance with the law. If it does not purport to be signed by the requisite number of voters of the town, if it does not purport to be signed by the voters in their own proper persons, and in other respects does not purport to conform to the requirements of the law, it would impose no duty upon the clerk to cause the question to be submitted at the election; but in determining these things the clerk acts as a ministerial and not as a judicial officer. (*Town of Somonauk* v. *People,* 178 Ill. 631; 38 Cyc. 612.) *Mandamus* is a proper remedy to compel a board or officer to perform a ministerial act where he is under a clear legal duty to do so. (*People* v. *Knopf,* 198 Ill. 340; 10 Am. & Eng. Ency. of Law, 805.) The precise question here involved was passed upon at our April, 1914, term in *People* v. *Leming.* In that case a petition for a writ of *mandamus* against the clerk of West Frankfort, Franklin county, was, by leave granted, filed in this court, asking that the writ be awarded to compel the clerk to print on the official ballot to be voted at the April election, the proposition whether the political subdivision should become anti-saloon territory. The answer to the petition for *mandamus*

set up various objections to the sufficiency of the petition filed with the clerk. Some of them were the same as the objections here made, and others, though not the same, were similar in character. There, as here, the petition, on its face, complied with the statute. The answer was demurred to and the cause submitted upon typewritten briefs and oral arguments. In an oral announcement (not published) it was held the petition appeared to be in conformity with the statute, and that in such case it was obligatory upon the clerk to submit the proposition to a vote at the election. It was further held that if the petition, although on its face in apparent conformity with the law, in fact was not so for the reasons assigned, that might be determined in a proceeding to contest the validity of the election, but that the legislature had not seen fit to make any provision for the determination of that question by the clerk before the election. *People* v. *Wanek,* 241 Ill. 529, is not in conflict with this view. In that case a petition for a writ of *mandamus* was filed in the superior court of Cook county against the town clerk of the town of Calumet and the board of election commissioners of the city of Chicago, to compel the town clerk and the board of election commissioners to place on the ballot to be voted at the ensuing election, the proposition whether the town of Calumet should become anti-saloon territory. That town lay partly within and partly without the limits of the city of Chicago. The city is under the Election Commissioners act, which requires legal voters within the city to be registered before they shall have a right to vote. A part of the signers to the petition filed with the clerk resided in that part of the town lying within the city limits of the city of Chicago and it did not appear from the petition that they were registered voters. It was held in that respect the petition, on its face, did not comply with the requirements of the statute.

It is further contended the judge before whom the cause was tried was without jurisdiction to hear and determine

the case. The judge who heard the cause is judge of the city court of Spring Valley, Bureau county, which county is in the same judicial circuit with LaSalle county. It is not questioned that the City Court act confers power upon judges of the city courts to preside in circuit courts and perform the duties of a circuit judge, but it is claimed the record should show that Judge Hawthorne was called to preside in the circuit court of LaSalle county and hear the case by a judge of the circuit court when a change of venue was taken from two of them. We think this contention is without merit. The presumption will be indulged that Judge Hawthorne was called to hear the case by proper authority, and not, as counsel says, that he assumed jurisdiction *sua sponte.*

It is also contended that this is now a moot case and the judgment should be reversed for that reason. If the application for the writ of *mandamus* had been denied and the judgment denying it was sought to be reversed after the election had been held a different question would be presented. But here the judgment was right. Its enforcement was prevented by plaintiff in error until after the election was held. We do not think that state of affairs calls for the reversal of a judgment that was correctly entered, and the judgment will therefore be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CRAIG, dissenting:

The entire petition filed with the town clerk never appeared in the proceedings in the court below or in the record in this court, and there is no warrant for the assumption in the foregoing opinion that such petition was made a part of the petition for *mandamus* and showed, *prima facie,* a compliance with the statute. The petition for *mandamus* states "that the form of each sheet or page of said petition [filed with the clerk] is in substance the same as a copy of one of the pages of said petition hereto attached and marked

'Exhibit A.' " Said exhibit contains 20 names out of a total of over 900 voters alleged to have signed the petition, and so far as showing a valid petition filed with the respondent, the town clerk, which ought to be considered by the court as a foundation of the right to the writ of *mandamus,* there is nothing except the averments and conclusions of the petitioners to show a compliance with the statute. The question of the jurisdiction of this court was specifically raised by a motion filed at the June term to transfer the cause to the Appellate Court for the Second District, which motion was considered and denied. The decision in *Scown* v. *Czarnecki,* 264 Ill. 305, had not then been rendered, and as the constitutionality of the act granting the right of suffrage to women was raised by plaintiff in error's answer, the writ of error was properly sued out of this court. *Dietz* v. *Big Muddy Coal Co.* 263 Ill. 480.

When the petition for *mandamus* was filed the respondent demurred to the sufficiency thereof. This demurrer was not overruled by the court, as stated in the foregoing opinion, but, on the contrary, the petitioners confessed the demurrer by taking leave to amend and amending the petition for *mandamus.* The respondent then filed pleas in which he traversed the allegations of the petition, which he had a right to do. *Mandamus* is an action at law. The respondent may demur or traverse the allegations of the petition or he may confess and avoid, setting up other facts showing that he is under no obligation to perform the act. This is elementary and has always been held by this court to be the law in this State. (*People* v. *Salomon,* 46 Ill. 333; *People* v. *Holden,* 91 id. 446; *Chicago and Alton Railroad Co.* v. *Suffern,* 129 id. 274; *Mayor of Roodhouse* v. *Briggs,* 194 id. 435.) The authorities cited in the foregoing opinion do not sustain the position there taken. In *Town of Somonauk* v. *People,* 178 Ill. 631, this court held that while the duties of a county board on a petition to divide a town were ministerial, it further held that the county

board had the power to determine whether a petition to divide a town is signed by the requisite number of voters and whether the statutory requirements as to territory, etc., are satisfied. In that case it was said: "The only functions of the board are to determine, before taking action, whether the petition bears the signatures of the necessary number of qualified petitioners; that the territory to be erected into a new town is of the requisite area; that the disconnection thereof does not reduce the area of the dismembered town below the statutory requirement; to give the notices required by the statute that the petition is pending before it for action, and to grant the prayer of the petition if the requirements of the statute have been observed and fulfilled. * * * Transcripts of the record of the proceedings of the board, which were attached to the petition as exhibits thereto, disclosed that a committee, composed of members of the board appointed by the board for the purpose, verified the authenticity of the signatures of legal voters to the petition and ascertained the number thereof, and also the number of legal voters residing in the territory of the proposed new town, and made report thereof to the board, and it thus further appeared the names of three-fourths of said voters were subscribed to the petition. The determination of this preliminary fact, though it involved the exercise of judgment on the part of the board and its members, was but a finding as to the existence of a fact necessary to be known to the board itself in order to determine whether a state of case existed calling upon it to act. Acts of that character are ministerial—not jucial—in nature, and, if necessary, their determination, or the action taken upon them, may be reviewed and controlled by the writ of *mandamus.*—Merrill on Mandamus, sec. 44; 19 Am. & Eng. Ency. of Law, 479." In 38 Cyc. 612, cited in the majority opinion, it is stated: "The judgment of the officer to whom the application is addressed is

conclusive as to the qualifications of the petitioners,"—citing *State* v. *Lime,* 23 Minn 521, which was a *mandamus* suit to compel the execution and delivery of certain bonds of the town of Lime issued pursuant to a vote of the voters of said town at a special town meeting. It was claimed that the written statement filed with the town clerk under the laws of Minnesota, requesting a town meeting to be called, though purporting, on its face, to be regular and to be signed by the requisite number of freeholders of the town, did not, in fact, contain such number. The court held that when a written statement is duly filed under the Minnesota law for a special town meeting, the question whether the persons subscribing such statement as freeholders are legally such, in fact, is one for the town clerk to determine prior to giving notice of the meeting. As stated in the opinion: "The power to call a special town meeting is vested by the statute solely with the town clerk. Upon that officer the duty is imposed of making a call whenever the requisite written statement provided by section 16 is filed in his office. Whether it is such a statement as is therein provided is a matter alone for him to determine, in the honest exercise of his best judgment upon the information before him and such as may lawfully be presumed to be within his reach and possession. The statute, doubtless, selected him as the most fit person to be entrusted with the exercise of this power, because his official relations with the town and its citizens are necessarily such as would likely well qualify him for an intelligent and impartial discharge of the duty imposed." A similar question was considered by this court in the case of *People* v. *Logan County,* 45 Ill. 162, which was a *mandamus* suit to compel the board of supervisors of Logan county to submit to the voters of that county the proposition of subscribing stock in a railroad company and issuing bonds in payment therefor under a statute then in force which provided that upon a petition being filed with

the board of supervisors, signed by 200 legal voters of the county, requesting the submission of such proposition to the voters of the county, the county board should submit such proposition at the next ensuing election. In the opinion in that case the court said: "The petition being signed by the requisite number of names purporting to be legal voters of the county, the board would have been authorized to act upon it as genuine and what it purported to be. Or they might have required proof, if they desired it, before making the order submitting the question." In *State* v. *Eureka County,* 8 Nev. 309, where the statute required the board of commissioners to call an election for county officers when a certain number of qualified electors of the county petitioned therefor, it was held that the questions whether the necessary number of electors had petitioned and whether they were qualified electors must be determined by the commissioners acting judicially, and, therefore, *mandamus* would not lie to compel them to call an election. To hold that a clerk is obliged to act upon any list of names that may happen to be presented,—a petition that is forged or one signed by aliens, non-residents, minors, and others who are known to the officer not to be legal voters,—is simply to open the door to fraud and destroy the intent and effect of the law. The Local Option statute provides that such petition shall only be *prima facie* evidence that the signatures, statements and residence and dates upon such petition are genuine and true and that the persons signing the petition are legal voters of the political subdivision named. The decision of this court takes the words *"prima facie"* out of the statute and substitutes in their place the word "conclusive." Any person interested can file a petition for *mandamus* to prevent submitting the question to a vote or printing the same on the ballots, and in such case the issue is formed by demurrer or answer or proper pleas as to whether or not the petition is valid and meets the statutory requirements and whether or not it has been properly and lawfully signed

by one-fourth of the legal voters, and such has been the
common practice.   It would seem to make no difference
how the issue is presented if the issue is, in fact, presented
whether or not the petition has been actually signed by the
requisite number of legal voters.   If a clerk has unlawfully
entertained a petition which is not so signed, or if a clerk
has refused to entertain a petition that has been signed by
the requisite number, in either case the issue is the same
and should be tried accordingly.

The pleas or answer averred that 426 of the signers of
the petition to the town clerk were women and were not
legal voters.   At that time the question was pending in this
court as to whether the Women's Suffrage act of 1913, by
which the right had been extended to women to vote for
certain statutory officers and on certain propositions, was
constitutional.   The respondent had a perfect right to raise
that question and have it decided.   Had the petition for
*mandamus* alleged the fact that the women signers were
necessary to make up one-fourth of the total number of
votes the point could have been properly raised by demur-
rer.   Under the allegation that they were legal voters it
was properly raised by plea or answer.   The pleas or an-
swer in the case at bar set up, besides the matters of de-
fense stated in the opinion, that 221 names appear on said
petition of whom there was no statement, under oath, that
they were legal voters; that 113 signers did not sign un-
der their right names; that on pages 20 and 21 of the peti-
tion the oath of the person procuring the names was made
before a person who did not designate in what capacity he
administered the oath; that on page 48 of the petition there
is no date showing in what year the person procuring the
names made oath to their signatures; that on eleven pages
of the petition it appeared that the persons whose names
appeared thereon did not sign said petition in their own
proper persons, only, as required by law, but that their sig-
natures on the petition were written there by some persons

other than the persons whose names appeared thereon and the writing in of such names by others was contrary to law, and that all of said foregoing names could not be considered by the respondent in determining whether the said petition contained not less in number than one-fourth of the total vote cast at the last preceding election. The relators demurred to these pleas. If the pleas stated the truth,—and the demurrer admits they do state the truth,—then there were upwards of 600 names, as appears from the petition itself, that should not have been counted under the law, and with these names out, irrespective of the right of women to sign, the petition did not contain the names of one-fourth the legal voters of the town. The court sustained the demurrer and ordered the respondent to comply with the prayer of the petition for *mandamus* and cause to be printed on the ballots at the ensuing election the proposition as prayed. The respondent duly excepted to the ruling of the court and prayed an appeal. The appeal was denied by the court notwithstanding the provision of the statute of this State on *mandamus* that "appeals and writs of error may be taken and prosecuted in the same manner, upon the same terms, and with like effect as in other civil cases." (Hurd's Stat. 1913, chap. 87, sec. 10.) The respondent had a clear right of appeal, and it was error in the court to deny that right. *Highway Comrs.* v. *Drainage Comrs.* 257 Ill. 25; *People* v. *Deneen,* 201 id. 452.

The pleas set up facts which show that the alleged petition, on its face, did not comply with the law and that no legal petition had been filed. As to the truth of the matters set up by these pleas, that could only be determined from an inspection of the petition alleged to have been filed with the respondent as town clerk. In the case of *People* v. *Wanek,* 241 Ill. 529, this court held squarely that the filing of a proper petition under the Local Option law was jurisdictional, and that the town clerk was right in refusing to submit a proposition to make the town anti-saloon terri-

tory unless a petition which conforms to the statute had been filed with him. An inspection of the record in that case on file in this court shows that the petition for *mandamus,* as originally filed, set out, by description, a petition filed with the town clerk, which petition was perfect in all respects, and purported, as is claimed for the petition in the case at bar, to be signed by more than one-fourth of the legal voters of the town. It further appears from such record that objections to the petition were filed with the clerk, as was done in the case at bar, and a hearing was had thereon. In refusing to submit the proposition the clerk exercised his knowledge of the territorial limits of the town as to what part was within the city limits of Chicago and what part was without, and as to the names of the voters of the town who lived within the city limits of the city of Chicago and were obliged to be registered voters and as to those who lived without the city. It is true, the petition for *mandamus* was amended to show the true fact that certain of the petitioners lived within the city limits of Chicago and were not described in the petition as registered voters, as required by the Local Option law, and then the insufficiency of the petition filed with the town clerk was raised by demurrer. Can there be any doubt that if the petition for *mandamus* had not been amended but had alleged that a proper petition had been filed with the clerk such allegation could not have been denied by a proper plea or answer? The effect of the decision in the *Wanek case* is, that a clerk is not compelled to act on a petition which of his own knowledge he knows to be defective and cannot be compelled to act on such defective petition by *mandamus.* That was the point decided, and that being true, it makes no difference whether the case is tried upon a demurrer to a petition which states the truth and therefore does not state a cause of action, or on a petition which is false and the truth of which is denied by plea or answer. In the case at bar the respondent traversed the

petition for *mandamus* and by apt pleas tendered the issue
that no lawful petition had been filed on which he was com-
pelled to act. The foundation of the petition for the writ
of *mandamus* was a valid petition alleged to have been filed.
A copy of the petition is not set out so we can determine
its sufficiency. It is denied there was such a lawful peti-
tion. In the *Wanek case* the court held that a clerk with
whom a similar petition was filed was not obliged to act
on a petition he knew did not state the truth, although on
its face it was in proper form. That was the law in this
State when the writ of error was sued out and the *super-
sedeas* granted. While the petition for *mandamus* in the
case at bar alleged a lawful and proper petition had been
filed with the respondent as town clerk, the pleas set up
facts which showed such petition was defective on its face.
The fact that it was not stated that certain of the petition-
ers were legal voters, that the date of signing by others does
not appear, that the sworn statement as to certain signers
is not dated,—all these matters are matters that appear on
the face of the petition. The fact that certain of the al-
leged petitioners did not personally sign the petition but
their names were written in by some other person and that
others did not sign in their right names might also appear
from the petition itself. I think the plain meaning of the
law is, that when a petition is presented to the proper offi-
cer with whom it is required to be filed, which petition is
in conformity with the statute and apparently contains the
names of the required number of legal voters of the politi-
cal subdivision, such officer should act on such petition and
the petition is *prima facie* evidence of what it purports to
be. If, however, it is lacking in the statutory requirements,
as can be seen by inspection, or if it contains the names
of persons the officer of his own knowledge knows are
not qualified legal voters of the subdivision or who do not
reside at the places stated by street and number or who
were not present when the petition was signed, or if posi-

tive knowledge of such matters is brought to him before acting on such petition, then it ceases to be *prima facie* evidence of what it purports to be, and he is not compelled to act thereon and it is his duty to refuse to submit the proposition. The foregoing opinion holds that the clerk can set up matters of defense which appear from the petition itself, and then holds that a demurrer to pleas setting up these defenses should be sustained. I think the correct rule was laid down in the *Wanek case,* and that case should be followed. If the clerk is obliged to act, without question, on any list of names that is presented to him, the effect will be to nullify the law, the intent of which is to afford an honest election on an honest petition.