(No. 43844.—

THE PEOPLE *ex rel.* Robert H. Rice, State's Attorney, Petitioner, *vs.* THE APPELLATE COURT OF ILLINOIS, FIFTH DISTRICT, *et al.*, Respondents.

*Opinion filed April 1, 1971.*

GoldenhersH, J., took no part.

Underwood, C.J., and Davis, J., specially concurring in part and dissenting in part.

Robert H. Rice, State's Attorney, of Belleville, for petitioner.

John J. Hoban, of East St. Louis, and Harry E. Hartman, of Granite City, for respondent.

Mr. Justice Kluczynski delivered the opinion of the court:

This cause is in this court on original petition, filed pursuant to motion, praying that a writ of prohibition issue against the Appellate Court, Fifth District, and Honorable Edward C. Eberspacher, Justice of the Appellate Court of Illinois for the Fifth District. The petition was filed on the relation of Robert H. Rice, State's Attorney for St. Clair County, and alleged that on September 21, 1970, Morris Campbell, Lawrence Tolar, George Duff and William Ebersoldt were convicted in the circuit court of St. Clair County, of official misconduct, each having been found guilty on five counts in an indictment based on section 33—3 of division I of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 33—3) charging misconduct by the defendants in their position as trustees of the East Side Levee and Sanitary District located in Madison and St. Clair Counties; that on December 1, 1970, the Honorable Alvin Maeys entered judgment on said conviction and sentenced each defendant to three years probation, fined each defendant $250 on each count and entered a finding pursuant to section 33—3 that the defendants had forfeited their offices; and that the defendants made a motion in the trial court for a stay of the judg-

ment, which motion was denied. The petition further alleged that the defendants filed notice of appeal to the Appellate Court of Illinois, and on December 5, 1970, Edward C. Eberspacher, Judge of the Appellate Court of Illinois, Fifth District, entered an order staying the judgment in the criminal proceedings and staying the ouster from office of each defendant until such time as the criminal appeals should come to rest.

Petitioner prays for a writ of prohibition commanding the Appellate Court and the Honorable Edward C. Eberspacher to refrain and desist from exercising any further jurisdiction in said cause insofar as it relates to the continuance in office of the trustees of the East Side Levee and Sanitary District, and further prays that such order staying the ouster be declared null and void.

As stated in *People ex rel. Modern Woodmen of America* v. *Circuit Court,* 347 Ill. 34, "* * * the general rule is that a writ of prohibition may be issued by a superior court to an inferior court to prevent the latter from assuming jurisdiction not vested in it, or exceeding jurisdiction which it has by going beyond its legitimate powers in a matter within its jurisdiction. Jurisdiction of a court in a particular case is not alone the power of the court to hear the cause, but it likewise involves the power to render the particular judgment entered, and every act of the court beyond that power is void." 347 Ill. at 42-43.

The only issue before this court is whether the appellate court had jurisdiction to enter the stay order in question. Supreme Court Rule 609(c) provides in part that on appeals "the judgment or order may be stayed by a judge of the trial or reviewing court, with or without bond." (43 Ill.2d R. 609.) This court has not restricted the authority granted by the rule. It is clear that the appellate court had jurisdiction to stay the order of the circuit court.

Petitioner argues that considering the public policy of the State of Illinois as proclaimed in *People ex rel. Keenan*

v. *McGuane,* 13 Ill.2d 520, the appellate court does not have the judicial power to stay the finding of ouster of the four officials convicted; and that the appellate court therefore has exceeded and abused its jurisdiction. In *Keenan* petitioner sought through *mandamus* to compel the Board of Commissioners of Cook County to restore him to the office of Cook County Assessor. Petitioner had been convicted in the United States District Court of conspiracy to evade and the evasion of income taxes and had at that time perfected an appeal to the United States Court of Appeals. He argued that conviction of the crime of conspiracy to evade and evasion of income taxes would not forfeit his office and that during the appeal the conviction was not final. The court stated: "For the purpose of effecting a vacancy in office, we hold a felony to be infamous within the concept of the common law, if it is inconsistent with commonly accepted principles of honesty and decency, or involves mortal turpitude. We find that the crime of which the petitioner stands convicted was federally denominated as felonious and infamous and that it falls within this classification." (13 Ill.2d at 535-536.) The court further stated: "While neither the constitution nor the statutes effecting its purpose define the term 'conviction', yet respect for the law and deference to the transcendent trust placed in public officials requires that such officer forfeit his office after the presumption of his innocence is dispelled by conviction of an infamous crime in a trial court. We conclude that the provisions of the Illinois constitution and statutes effecting a vacancy in public office upon the conviction of the incumbent of an infamous crime refer to the conviction in a trial court." 13 Ill.2d at 537.

In *Keenan,* conviction at trial for an infamous crime forfeited the office. However, the issue remains whether this holding clearly controls the instant case. Here defendants were convicted of knowingly performing acts which they, as trustees of the sanitary district, were forbidden by

law to perform. It was argued that these violations were *malum prohibitum,* not *malum in se.* A conviction under section 33—3 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 33—3) does not necessarily involve moral turpitude. The basis of the forfeiture of office in this case was not conviction of an infamous crime, but rather it was part of the statutory punishment for conviction under section 33—3. Judge Eberspacher found that there was reasonable cause for believing that the judgment of the circuit court of St. Clair County, Illinois, finding each of the four defendants guilty of official misconduct in office and subject to forfeiture of their public office, should be stayed pending appeal. Under the circumstances of the case we cannot say that *Keenan* is controlling so that Judge Eberspacher lacked the discretion to stay the forfeiture. Consequently, under Supreme Court Rule 609(c) the appellate judge had jurisdiction on direct appeal to stay the entire order of the circuit court including the forfeiture of office as provided in section 33—3.

We are of the opinion, therefore, that for the aforementioned reasons it is inappropriate to issue a writ of prohibition in this matter.

*Writ denied.*

Mr. Justice Goldenhersh took no part in the consideration or decision of this case.

Mr. Chief Justice Underwood, specially concurring in part and dissenting in part:

I agree that the Appellate Court had jurisdiction under Rule 609(c) to stay the order of the circuit court, and that such stay order encompassed the ousters from office. However, I disagree with the majority opinion insofar as it may be thought to imply that a "conviction" of official misconduct (Ill. Rev. Stat. 1969, ch. 38, par. 33—3) means final disposition of the case, including appeals, rather than conviction in the trial court.

The majority distinguishes *People ex rel. Keenan v. McGuane,* 13 Ill.2d 520, on the basis that infamous crimes are *malum in se,* while violations of section 33—3 (official misconduct) are *malum prohibitum.* The conclusion apparently drawn from this distinction is that the public policy considerations expressed in *Keenan,* and relied upon here by petitioner, are of less consequence when an elected official is convicted of official misconduct than when he is convicted of an infamous crime. It is anomalous, in my judgment, to hold that conviction of official misconduct, an offense specifically directed at malfeasance and nonfeasance by an incumbent in his official capacity, is any less destructive of public confidence in elected officials than an infamous crime conviction of which may or may not reflect a dereliction of official duty. The legislature has accordingly provided that forfeiture of office is a consequence of a section 33—3 conviction as well as of an infamous crime conviction and, absent evidence of a contrary intent, "conviction" should be similarly construed in both instances to mean conviction at the trial court level. See Annot. (1960), 71 A.L.R. 2d 593.

Both logic and the weight of authority compel the conclusion that forfeiture of office is an inevitable and irreversible consequence of the convictions. (43 Am. Jur. (1942) Public Officers, § 200; Annot. (1937), 106 A.L.R. 644; See *Keenan.*) Neither the stay order, nor even eventual reversal of the convictions, can prevent the forfeitures. The statutorily prescribed forfeiture is not a punishment, which may be retracted or reversed along with the conviction, but rather it is an implementation of public policy, borne of the need to maintain public confidence in public officers and assure continuity and stability in the function of public bodies. And this, I believe, is the clear import of *Keenan.* (*Keenan,* 13 Ill.2d 520, 536-7; *State v. Twitchell,* 59 Wash. 2d 419, 367 P.2d 985, 992, and cases cited therein; Annot. (1960), 71 A.L.R. 2d 593, 600.) While the stay order here cannot, in my opinion, have any effect upon the

forfeitures, which are *faits accomplis*, I do believe that in the circumstances here present the order may properly hold the ousters in abeyance.

The levee district consists of a substantial and rather complex municipal operation. It is governed by a five-man board of trustees, four of whom would be ousted from office were it not for the stay order. The legislature has provided no method whereby the board could be immediately returned to its full complement, nor have petitioners here suggested any question-proof means of governing the operation of the district pending the statutorily required election of new trustees. (Ill. Rev. Stat. 1969, ch. 42, par. 251.) Thus the policy of preserving public confidence in elected officials conflicts with the doctrine that the law abhors forfeitures and the attendant disruption in the functioning of public bodies. (See 67 C.J.S. (1950), Officers, § 50.) I believe the reasonable effect of the stay order is to hold the ousters in abeyance until lawfully elected successors are available at which time an automatic transition of powers will occur.

In this connection it is pertinent to note that the Governor has authority by statute to determine that "vacancies" exist on the board of trustees, for the purpose of calling a special election. (Ill. Rev. Stat. 1969, ch. 46, par. 25—3, and ch. 42, par. 251; see, also, ch. 46, par. 25—2, and ch. 38, par. 33—3; *People ex rel. Comerford* v. *Miller*, 314 Ill. 474; *People ex rel. Dever* v. *Sweitzer*, 314 Ill. 330; *People ex rel. Anderson* v. *Czarnecki*, 312 Ill. 271.) Since the forfeitures here occurred as of the time of the trial court convictions, and are irreversible, the order staying the ousters would not appear to alter the fact that, for special election purposes, vacancies exist in the offices. It is not necessary that the vacancy underlying a special election be a corporal vacancy in the literal sense. *Greening* v. *Barnes*, 355 Ill. 99; *People* v. *Pillman*, 284 Ill. App. 287; 67 C.J.S. (1950), Officers, §§ 50-53; 42 Am. Jur. (1942), Public Officers, § 133.

In the final analysis, the effect of the stay order here is to delay the inevitable ousters until the prospect of chaos in the district is avoided. Notwithstanding the purport of the order to stay the ousters pursuant to section 33—3 until after final disposition on appeal, the qualification of successors lawfully chosen in a special election should, as I see it, bring about the ousters automatically by virtue of the successors' clearly superior rights to office. (*Cf. Greening* v. *Barnes,* 355 Ill. 99.) Thus, while I would find it preferable for the stay order to expressly provide that its effect upon the ousters expires upon the qualification of successor trustees, I anticipate that the same result will obtain under the stay order as issued.

Accordingly, I concur in the conclusion of the majority that a writ of prohibition should not issue, but for the reason that it is unnecessary, rather than inappropriate.

Mr. JUSTICE DAVIS joins in this special concurrence and dissent.